IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No. 13-cv-02922-REB - AP

In re:

LARRY RALPH GENTRY,
also known as Larry Gentry, officer, director,     Bankr. No. 11-37658-MER
shareholder Ball four, Inc., and                   Chapter 11

SUSAN ELLEN GENTRY,
also known as Susan Gentry, officer, director,
shareholder Ball Four, Inc.

                Debtors.
_____

2011-SIP-1 CRE/CADC Venture, LLC,

                Appellant,

v.

LARRY RALPH GENTRY, and
SUSAN ELLEN GENTRY

                Appellees.

---

**ORDER AFFIRMING ORDERS OF THE BANKRUPTCY COURT**

---

**Blackburn, J.**

      This matter is before me on the appeal filed by creditor 2011-SIP-1 CRE/CADC

Venture, LLC (SIP) concerning its objections to the Chapter 11 plan of the debtors,

Larry and Susan Gentry, and to the confirmation of that plan. The appellant filed an

opening brief [#23][1], the debtors filed a response brief [#24], and the appellant filed a reply [#25]. I affirm the orders of the bankruptcy court.

## I. JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11, United states Code. I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

## II. STANDARD OF REVIEW

I am bound by the findings of fact, of the bankruptcy court unless they are clearly erroneous. FED. R. BANKR. P. 8013; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986). A finding of fact is clearly erroneous only if the appellate court has the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy court, unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. *Jardine's Professional Collision Repair, Inc. v. Gamble*, 232 B.R. 799, 800 (D. Utah, 1999) (citing *Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir. 1995) (internal citations omitted); *In re Dinviney*, 225 B.R. 762, 769 (B.A.P. 10th Cir. 1998) (internal citations omitted); *In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 310 (B.A.P. 10th Cir. 2006). I review *de novo* conclusions of law reached by the bankruptcy court. *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987).

---

[1] "[#23]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

opening brief [#23][1], the debtors filed a response brief [#24], and the appellant filed a reply [#25]. I affirm the orders of the bankruptcy court.

## I. JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11, United states Code. I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

## II. STANDARD OF REVIEW

I am bound by the findings of fact, of the bankruptcy court unless they are clearly erroneous. FED. R. BANKR. P. 8013; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986). A finding of fact is clearly erroneous only if the appellate court has the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy court, unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. *Jardine's Professional Collision Repair, Inc. v. Gamble*, 232 B.R. 799, 800 (D. Utah, 1999) (citing *Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir. 1995) (internal citations omitted); *In re Dinviney*, 225 B.R. 762, 769 (B.A.P. 10th Cir. 1998) (internal citations omitted); *In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 310 (B.A.P. 10th Cir. 2006). I review *de novo* conclusions of law reached by the bankruptcy court. *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987).

---

[1] "[#23]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

opening brief [#23][1], the debtors filed a response brief [#24], and the appellant filed a reply [#25]. I affirm the orders of the bankruptcy court.

## I. JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in all civil proceedings arising in cases under Title 11, United states Code. I have jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

## II. STANDARD OF REVIEW

I am bound by the findings of fact, of the bankruptcy court unless they are clearly erroneous. FED. R. BANKR. P. 8013; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986). A finding of fact is clearly erroneous only if the appellate court has the definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364 (1948). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy court, unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. *Jardine's Professional Collision Repair, Inc. v. Gamble*, 232 B.R. 799, 800 (D. Utah, 1999) (citing *Gillman v. Scientific Research Prods. (In re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir. 1995) (internal citations omitted); *In re Dinviney*, 225 B.R. 762, 769 (B.A.P. 10th Cir. 1998) (internal citations omitted); *In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 310 (B.A.P. 10th Cir. 2006). I review *de novo* conclusions of law reached by the bankruptcy court. *In re Mullet,* 817 F.2d 677, 678 (10th Cir.1987).

---

[1] "[#23]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## III.  BACKGROUND

The debtors, Susan and Larry Gentry, are the sole shareholders, officers, and directors of Ball Four, Inc.  In 2010, Ball Four sought bankruptcy protection under Chapter 11 of the United States Bankruptcy Code.  In 2011, the Gentrys sought bankruptcy protection under Chapter 11.  The issues raised by the appellant in this appeal concern its treatment under the Chapter 11 plan of the Gentrys and the relationship of the Gentry plan to the Chapter 11 plan of Ball Four.

Ball Four operates a sports complex.  In 2005, FirsTier Bank loaned about 1.9 million dollars to Ball Four.  The loan proceeds were to be used to pay off a previous loan and to fund the construction of two buildings to expand the business.  R II, p. 164.[2] The FirsTier loan was secured by real estate owned by Ball Four.  The Gentrys each signed separate personal guaranties of this debt.  R. II, pp. 10 – 15. The terms of the two guaranty agreements are identical.

On September 21, 2010, Ball Four filed a petition seeking relief under Chapter 11.  FirsTier asserted a secured claim in the amount of 3,572,158.12 dollars.  R. II, p. 33. FirsTier estimated that its security interest in real estate owned by Ball Four was sufficient to secure its claim.  *Id.*   Ball Four proposed a plan of reorganization which provided that FirsTier's claim would be paid in full, plus 6% interest, and that FirsTier would retain its lien on Ball Four's property until FirsTier's claim was paid in full.  R. II, pp. 164-65.  FirsTier did not object to the Ball Four plan.  R. II, p. 165.

In January 2011, the Colorado Division of Banking closed FirsTier, and the Federal Deposit Insurance Corporation was appointed as receiver.  R. II, p. 164.  The

---

[2] The record in this case is docketed as [#8], and contains two volumes.  Volume I can be found at [#8-1] and Volume II can be found at [#8-2].  I cite the record by volume and CM/ECF page number, e.g., R. I, p. 1.

FDIC did not object to the Ball Four plan. R. II, p. 165. On August 5, 2011, the FDIC conveyed all rights under the Ball Four promissory note to the appellant, 2011-SIP-1 CRE/CADC Venture, LLC (SIP). R. II, p. 164. SIP did not object to its treatment under the Ball Four plan. R. II, p. 165. Ball Four's Chapter 11 plan was confirmed by the bankruptcy court on August 29, 2011. *Id.*

Holding both the Ball Four promissory note and the guaranties signed by the Gentrys, SIP filed suit against the Gentrys in state court seeking to collect under the guaranties. On November 29, 2011, the Gentrys sought bankruptcy protection under Chapter 11. Under the Gentry Chapter 11 plan, SIP is treated as an unsecured creditor of the Gentrys. The Gentry plan provides that SIP will be paid under the confirmed Chapter 11 plan of Ball Four. R. II, pp. 166 - 167. Ultimately, SIP was the only creditor whose objections to the Gentry plan were addressed and resolved by the bankruptcy court. The bankruptcy court overruled the objections of SIP. V. II, pp. 163 - 177. On September 27, 2013, the bankruptcy court confirmed the Gentry Chapter 11 plan. R. II, p, 202.

In this appeal, SIP raises three issues based on the objections overruled by the bankruptcy court and, ultimately, the confirmation of the Gentry plan. The issues raised by SIP challenge two orders entered by the bankruptcy court: (1) the September 12, 2013, order of the bankruptcy court overruling the objections to confirmation asserted by SIP, R. II, pp. 163 – 177; and (2) the September 27, 2013, order of the bankruptcy court confirming the Gentry Chapter 11 plan. R. II, p, 202. First, SIP contends the Gentry plan violates the plain language of the guaranties signed by the Gentrys because the Gentry plan equates the liability of the Gentrys under the guaranties with the allowed amount of SIP's claim in the Ball Four bankruptcy. In essence, SIP contends the Gentry

4

plan improperly reduces the value of SIP's claim against the Gentrys under the terms of the guaranties.  Second, SIP contends the Gentry plan violates the absolute priority rule by permitting guarantors, the Gentrys, to maintain shares in their wholly-owned business, Ball Four, even though their plan pays SIP only the amount of the claim allowed in the Ball Four bankruptcy and not the full outstanding amount due under the guaranties.  The first two issues are closely related, and, thus, I consider them together. Third, SIP contends the bankruptcy court failed to conduct a thorough and searching feasibility analysis of the Gentry plan before confirming the plan.   I address each issue in turn.

### IV.  VIOLATION OF GUARANTY TERMS & ABSOLUTE PRIORITY RULE

#### A.  Guaranty Terms

In its effort to enforce the guaranties of the Gentrys, SIP concluded that the full amount due under the Ball Four promissory note, and, thus, under the guaranties, was more than the amount asserted by FirsTier in the Ball Four bankruptcy proceeding. Addressing this issue in the Gentry bankruptcy proceedings, SIP argued:

> SIP is asserting the full amount of default interest that the . . . promissory note permits SIP to assert, which differs substantially from the less aggressive calculation that FirsTier asserted in Ball Four's case. The difference is not a ministerial amount that accrued between the confirmation of Ball Four's plan and the Gentrys' own petition.  The difference reflects the Gentrys' liability for the full amount of all applicable default interest that is due under the promissory note that the Gentrys guaranteed.

*SIP response,* R. II, p. 81.  The Gentrys argued that their liability under the guaranties is derivative of the obligation of Ball Four under the promissory note and, more important, the treatment of the promissory note in the Ball Four bankruptcy.  Under the terms of the guaranties, the Gentrys assert, their liability does not exceed the amount of Ball

5

Four's liability as determined and defined in the Ball Four plan.

The bankruptcy court found that "Ball Four's original indebtedness to SIP was replaced by the terms of its confirmed Chapter 11 plan." R. II, p. 172. "The confirmed Ball Four plan is a new and binding contract, substituting the previous indebtedness under the original note with the obligations in the plan." *Id*. Addressing the terms of the guaranties, the bankruptcy court analyzed the definition of the term indebtedness, as defined in the guaranties. In the guaranties, the Gentrys agreed to guaranty "full and punctual payment and satisfaction of the Indebtedness of [Ball Four] to [SIP]." R. II, pp. 10, 13. The guaranties define the term "indebtedness" to include all principal, interest, collection costs, legal expenses and attorney fees "arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that [Ball Four] individually or collectively or interchangeably with others, owes or will owe [SIP]." *Id*. The definition of indebtedness includes also

> without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred . . . .

*Id*. The unusual placement of a colon in this phrase is not explained.

As the bankruptcy court noted, the guaranties are governed by Colorado law. R. II, pp. 11,14. Under Colorado law, guaranty agreements are strictly construed in favor of the guarantor. **Walter E. Heller & Co. v. Wilkerson**, 627 P.2d 773, 775 (Colo. App. 1980). Based on the definition of the term indebtedness in the guaranties, and resolving any doubt in favor of the Gentrys, the bankruptcy court concluded that the obligation of the Gentrys under the guaranties is the same obligation owed by Ball Four under the Ball Four plan. In quoting the definition of indebtedness, the bankruptcy court

6

emphasized the language concerning transactions that "modify, refinance, consolidate or substitute these debts." R. II, p. 173. . Applying these terms, the bankruptcy court concluded that "the Personal Guaranties obligate the Gentrys to repay the same substituted indebtedness, and not a different indebtedness under the original (now modified) loan." *Id*. The substitution occurred when "Ball Four's original indebtedness to SIP was replaced by the terms of its confirmed Chapter 11 plan." R. II, p. 172.

SIP contends the findings and conclusions of the bankruptcy court are erroneous for four reasons. First, SIP contends that the Ball Four plan cannot silently alter the guaranty obligations of the Gentrys. SIP notes also that a discharge of Ball Four does not, by itself, relieve a guarantor of liability for the debts of Ball Four. 11 U.S.C. § 524(e). If that is true, then confirmation of the Ball Four plan cannot have that effect, SIP asserts. Further, under the terms of the guaranties, the Gentrys may not rely on defenses which may be asserted by the borrower, Ball Four. R. II, pp. 11,14. These contentions are accurate, *pro tanto*, but they ignore the terms of the guaranties on which the bankruptcy court relied. Under those explicit terms, the Ball Four plan altered the liabilities of the Gentrys but not silently or improperly. Rather, those liabilities were altered consistent with the explicit terms of the guaranties on which SIP relies. Here, the definition of the term indebtedness in the guaranties has meaning and concomitant consequences.

Second, SIP contends that limiting the liability of a guarantor to the allowed amount of a bankruptcy claim against a borrower exposes lenders to the very losses against which a guaranty should protect. No doubt, guaranties often are designed to protect the lender from the consequences of a bankruptcy filing by a borrower. But the specific terms of the guaranty at issue here determine the effect of the guaranty. The

7

effect of the specific terms of the guaranties of the Gentrys are described above. The fact that these guaranties do not accomplish what SIP contends a guaranty should accomplish is not a basis on which the terms of the guaranties may be altered by a court.

Third, SIP contends the language of the guaranties does not support the conclusions of the bankruptcy court. SIP notes that the guaranties provide that the guarantor "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness . . . ." R. II, pp. 10, 13. SIP relies on other provisions in the definition of indebtedness provided in the guaranties and the waivers of borrower defenses stated in the guaranties. SIP contends the bankruptcy court erred when it concluded that the Ball Four bankruptcy plan is a transaction, as that term is used in the guaranties, which substituted a new indebtedness for the original indebtedness of Ball Four. In the view of SIP, this reading of the terms indebtedness and transaction renders meaningless terms of the guaranties in which the guarantors promise full payment of the indebtedness and the guarantors waive the benefit of borrower defenses. In the end, SIP argues that the interpretation adopted by the bankruptcy court is "absurd." *Brief* [#23], p. 19.

I respectfully disagree and conclude that the interpretation of the bankruptcy court is reasonable. As SIP asserts, the primary purpose of the guaranties is to assure payment of an indebtedness. Thus, definition of the term indebtedness is crucial. SIP contends the word transaction, as used in defining indebtedness, may only be read reasonably to connote a voluntary exchange. The Ball Four plan, SIP asserts, was not voluntary and, thus, cannot be a transaction. According to SIP, the term transaction should be read as limited to a voluntary exchange because other terms used in the

same key sentence involve voluntary exchanges. The plain terms of the guaranties undermine this argument. The listing of terms just prior to the term transaction includes "judgments against Borrower," an event that generally is not voluntary. R. II, pp. 10, 13. More important, at the end of the listing of terms which includes the word transaction, the guaranties expand the scope of these terms, providing "whether: voluntarily or involuntarily incurred." R. II, pp. 10, 13. As used in the guaranties, a transaction includes an involuntary transaction.

The arguments of SIP notwithstanding, the interpretation of the bankruptcy court does not render meaningless other key terms of the guaranties. For example, the provisions in which the guarantors waive the benefit of defenses available to the borrower is not rendered meaningless by the interpretation of the bankruptcy court. Borrower defenses can arise in many contexts in bankruptcy and otherwise. The waiver provision would be applicable in many of those contexts. The fact that the waiver provisions are, effectively, overborne in these particular circumstances by the specific terms used to define the term indebtedness does not render the waiver provisions meaningless.

Fourth, SIP contends the holding in *First Interstate Bank of Denver N.A. v Colcott Partners IV*, demonstrates that the bankruptcy court did not apply the applicable law correctly. 833 P.2d 876 (Colo. App. 1992). In *Colcott*, the promissory note of the borrower was secured by a security interest in real estate. The note provided that if the lender took action to enforce collection of the note, the lender was limited to foreclosure on the real estate and could not collect any remaining deficiency from the borrower. In contrast, the guaranty of the borrower did not include such a

limitation. The court held that the guaranty exposed the guarantor to greater liability than that to which the borrower was exposed under the note. *Id*., at 878.

However, in the context of the Gentry guaranties, the *Colcott* holding is inapposite. Yes, a guaranty can be written to expose the guarantor to greater liability than that of the borrower. Given the facts of the present case, including the terms of the Gentry guaranties, the Gentry guaranties do not expose the Gentrys to greater liability than that defined in the Ball Four plan.

In sum, the interpretation of the key terms of the Gentry guaranties adopted by the bankruptcy court is compliant with applicable law and is reasonable. The arguments of SIP do not demonstrate that the bankruptcy court erred in interpreting and applying the terms of the Gentry guaranties in the Gentry bankruptcy.

### B.  Absolute Priority Rule

The absolute priority rule bars a junior creditor from receiving any property from the bankruptcy estate if a dissenting class of senior creditors is not made whole. *In re Paige*, 685 F.3d 1160, 1183 (10th Cir. 2012) (citing 11 U.S.C. § 1129(b)(2)). In the view of SIP, the holding of the bankruptcy court that the liability of the Gentrys under the guaranties is limited to the amount of the allowed claim of SIP in the Ball Four plan violates the absolute priority rule. This is true, SIP asserts, because the Gentrys effectively are discharged and excused from any liability in excess of the amount of the allowed claim of SIP in the Ball Four bankruptcy. Under the Gentry plan, the Gentrys retain their equity interest in Ball Four, yet SIP is not paid the full amount due from the Gentrys under the guaranties, as interpreted by SIP.

For the reasons detailed above, the bankruptcy court concluded properly that the liability of the Gentrys under the guaranties is equivalent to and commensurate with the

amount of the allowed SIP claim in the Ball Four bankruptcy. Both the Ball Four plan and the Gentry plan provide for full payment of the allowed SIP claim in the Ball Four plan. Both plans provide that SIP will be made whole. As a result, the provisions in the Gentry plan which permit the Gentrys to retain their equity interest in Ball Four do not violate the absolute priority rule.

## V.  PLAN FEASIBILITY

A bankruptcy court may not confirm a Chapter 11 plan unless it meets all of the requirements of 11 U.S.C. § 1129(a). One of these requirements mandates that "(c)onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." § 1129(a)(11). In bankruptcy shorthand, this means that a Chapter 11 plan must be "feasible." "The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts" of the case. **Clarkson v. Cooke Sales & Serv. Co.** (*In re Clarkson*), 767 F.2d 417, 420 (8th Cir. 1985) (quotation and citation omitted). Feasibility of a Chapter 11 plan is a question of fact. *In re Inv. Co. of The Sw., Inc.*, 341 B.R. 298, 310 (B.A.P. 10th Cir. 2006). On appellate review, the feasibility determination of the bankruptcy court is subject to a clearly erroneous standard of review. *Id*. SIP contends the feasibility analysis of the Gentry court was inadequate.

The Gentry plan contemplates payment by Ball Four of the Ball Four indebtedness to SIP under the terms of the confirmed Ball Four plan. The discharge provision of the Gentry plan provides:

> Upon completion of payments by the Debtors under their Plan to the holders of Allowed Unsecured Claims in Class 8 of the Plan, and by Ball Four under its confirmed Plan of Reorganization to the Class 6 and Class 7 creditors, the Debtors will request, after notice pursuant to Rule

11

> 9013 L.R.B.P., that the Court enter a discharge pursuant to 11 U.S.C. § 1141(d)(5) for the benefit of the Debtors.

Reviewing the objections of SIP to the Gentry plan, the bankruptcy court found that this provision of the Gentry plan "expressly indicates the Gentrys cannot request a discharge until after SIP's claim is paid in full as provided in the Ball Four plan. In other words, if SIP's allowed claim is not paid in full by Ball Four, the Gentrys may not seek a discharge in this case." The Gentry plan also provides that SIP may pursue collection against the Gentrys in the event of a default by the Gentrys or Ball Four under their plans. R. II, p. 169.

SIP contends the Gentry plan is not feasible because Ball Four has no ability to pay the allowed claim of SIP under the terms of the Ball Four plan. According to SIP, the post-confirmation operations of Ball Four have not generated sufficient cash to reserve funds to pay SIP or to pay the five year balloon payment contemplated in the Ball Four plan. In its brief, SIP outlines its view of the finances of Ball Four based on quarterly reports filed by Ball Four in its bankruptcy case. *Brief* [#23], p. 8. Under the Ball Four plan, Ball Four is not obligated to make payments to SIP until litigation concerning the SIP claim is resolved. In a separate bankruptcy appeal in the Ball Four case, the claims at issue in that litigation recently were remanded to the bankruptcy court in the Ball Four case. **Ball Four, Inc. v. 2011-SIP-1 CRE/CADC Venture LLC**, Civil Action No. 13-cv-02810-RBJ (D. Colo.), Order [#28] filed May 15, 2014.

Addressing the feasibility of the Gentry plan, the bankruptcy court noted the contention of SIP that Ball Four will not be able to pay the SIP debt under the Ball Four plan. R. II, p. 174. The court found that the argument of SIP in the Gentry case "mirrors the arguments SIP made before Judge Brown in SIP's Objection to Final Decree in the Ball Four bankruptcy case. Judge Brown overruled SIP's objection and

entered the final decree in that case." R. II, p. 174. The Gentry court observed that Ball Four is not in default on its confirmed plan. Further, the Gentry court found that entry of the Ball Four confirmation order constitutes a final judgment concerning the Ball Four plan with *res judicata* effect. *Id.*, p. 174 – 175. In essence, the Gentry court declined to second guess the feasibility determination of a different bankruptcy judge in the Ball Four bankruptcy. *Id.*, p. 175.

SIP argues that Ball Four is likely to default under its plan sometime in the future. The financial performance of Ball Four, as presented by SIP in its brief, raises some concern, but this snapshot in time does not demonstrate that the feasibility finding of the Gentry court is without factual support in the record. It was reasonable for the Gentry court to rely on the feasibility finding of another bankruptcy judge concerning the Ball Four plan, particularly when SIP had presented essentially the same objections to the Ball Four court after confirmation and in an effort to stop the issuance of a final decree in the Ball Four case. Further, nothing in the record shows that, in the event of a Ball Four default, the Gentrys would not be able to address their obligations under the guaranties and under the Gentry plan. Thus, the feasibility finding of the Gentry court was not clearly erroneous.

## VI.  CONCLUSION & ORDERS

The bankruptcy court properly interpreted the relevant provisions of the guaranties executed by the Gentrys concerning the Ball Four debt. Given the terms of the guaranties and the facts of this case, the liability of the Gentrys under the guaranties is limited to the obligation owed to SIP by Ball Four under the Ball Four plan. The Gentry plan does not violate the absolute priority rule. The conclusion of the bankruptcy court that the Gentry plan is feasible was not clearly erroneous.

**THEREFORE, IT IS ORDERED** as follows:

1. That the September 12, 2013, order of the bankruptcy court overruling the objections to confirmation asserted by SIP, R. II, pp. 163 – 177, is **AFFIRMED**;

2. That the September 27, 2013, order of the bankruptcy court confirming the Gentry Chapter 11 plan, R. II, p, 202, is **AFFIRMED**; and

3. That this case is **CLOSED**.

Dated September 23, 2014, at Denver, Colorado.

                              **BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge

14